UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SAMANTHA RAYNN, f/k/a BRANDY J. FROST,

Plaintiff,

v.

CAROLYN W COLVIN, Acting Commissioner of the Social Security Administration,[1]

Defendant.

CASE NO. 12-cv-05697 JRC

ORDER ON PLAINTIFF'S COMPLAINT

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 6; Consent to Proceed Before a United

---

[1] Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

ORDER ON PLAINTIFF'S COMPLAINT - 1

States Magistrate Judge, ECF No. 7). This matter has been fully briefed (*see* ECF Nos. 16, 20, 21).

The ALJ concluded that plaintiff had a number of medically determinable impairments, including arthritis, lupus, fibromyalgia, bipolar disorder, post-traumatic stress disorder, and substance abuse. In light of these findings, it is difficult to understand how the ALJ failed to conclude at Step 2 of the analysis that *any* single impairment or combination of impairments had "no more than a minimal effect" on plaintiff's ability to work. The ALJ's inaccurate and incomplete evaluation of the medical record, among other errors, is not harmless error and leads this Court to conclude that this matter must be REVERSED and REMANDED for further consideration.

## BACKGROUND

Plaintiff, SAMANTHA RAYNN, formerly known as BRANDY J. FROST, was born in 1975 and was 32 years old on the application date of July 17, 2008 (*see* Tr. 146). Plaintiff has an Associates of Applied Science degree from Grays Harbor Community College (Tr. 41). Plaintiff has no recent work history, but has worked as a dishwasher, a maid/desk clerk, short order cook and fast food worker (Tr. 56).

The ALJ concluded that plaintiff has at least the medically determinable impairments of arthritis, lupus, fibromyalgia, bipolar disorder, post-traumatic stress disorder, and substance abuse (20 CFR 416.921 *et. seq.*) (*see* Tr. 24). The ALJ also noted that plaintiff was diagnosed as morbidly obese, standing five foot four inches and weighing between 230 and 252 pounds (Tr. 28). She also has a history of substance abuse (Tr. 43, 460).

At the time of the hearing, plaintiff was living with her boyfriend in the home of an elderly gentleman, who was cared for by her boyfriend (Tr. 43-44).

## **PROCEDURAL HISTORY**

Plaintiff filed an application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act (*see* Tr. 146-149). Her application was denied initially and following reconsideration (Tr. 81-84, 88-90). Plaintiff's requested hearing was held before Administrative Law Judge Marguerite Schellentrager ("the ALJ") on July 30, 2010 (Tr. 35-64). On October 27, 2010, the ALJ issued a written decision in which she concluded that plaintiff was not disabled pursuant to the Social Security Act (Tr. 22-29).

On July 13, 2012, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-3). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in August, 2012 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on November 6, 2012 (*see* ECF Nos. 13, 14).

In her Opening Brief, plaintiff raises the following issues: (1) whether or not the ALJ's Step 2 finding that plaintiff has no severe impairments was legally sufficient; (2) whether or not the ALJ provided legitimate reasons for rejecting the reports of examining psychologists, Dr. Morris and Dr. Brown; (3) whether or not the ALJ provided legitimate reasons for rejecting the report of plaintiff's treating ARNP; and (4) whether or not the

ALJ provided reasons germane to Lindsay Frost for rejecting her lay statement (*see* ECF No. 16, p. 1).

## **STANDARD OF REVIEW**

Plaintiff bears the burden of proving disability within the meaning of the Social Security Act (hereinafter "the Act"); although the burden shifts to the Commissioner on the fifth and final step of the sequential disability evaluation process. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999); *see also Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995); *Bowen v. Yuckert*, 482 U.S. 137, 140, 146 n. 5 (1987). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment "which can be expected to result in death or which has lasted, or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Plaintiff is disabled under the Act only if plaintiff's impairments are of such severity that plaintiff is unable to do previous work, and cannot, considering plaintiff's age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such "'relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (*quoting Davis v. Heckler*, 868 F.2d 323, 325-26 (9th Cir. 1989)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). Regarding the question of whether or not substantial evidence supports the findings by the ALJ, the Court should "'review the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" *Sandgathe v. Chater*, 108 F.3d 978, 980 (1996) (per curiam) (*quoting Andrews, supra*, 53 F.3d at 1039). In addition, the Court must determine independently whether or not "'the Commissioner's decision is (1) free of legal error and (2) is supported by substantial evidence.'" *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2006) (*citing Moore v. Comm'r of the Soc. Sec. Admin.,* 278 F.3d 920, 924 (9th Cir. 2002)); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121, 2012 U.S. App. LEXIS 6570 at *42 (9th Cir. 2012); *Stout v. Commissioner of Soc. Sec.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("we cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision") (citations omitted). For example, "the ALJ, not the district court, is required to provide specific reasons for rejecting lay testimony." *Stout, supra*, 454 F.3d at 1054 (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). In

the context of social security appeals, legal errors committed by the ALJ may be considered harmless where the error is irrelevant to the ultimate disability conclusion when considering the record as a whole. *Molina, supra*, 674 F.3d 1104, 2012 U.S. App. LEXIS 6570 at *24-*26, *32-*36, *45-*46; *see also* 28 U.S.C. § 2111; *Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009); *Stout, supra*, 454 F.3d at 1054-55.

## DISCUSSION

### (1) Whether or not the ALJ's Step 2 finding that plaintiff has no severe impairments was legally sufficient.

The ALJ's conclusion that plaintiff did not suffer from any severe impairments is tied largely to issues regarding plaintiff's credibility. The ALJ concludes "the claimant's story of disability simply has too many inconsistencies to be credible" (Tr. 26). The ALJ cites, among other things, that plaintiff testified she was unable to leave her home, but the record indicates that she attended college on her own (*id.*); although plaintiff claimed to have disabling mental impairments, she was able to receive an associate of arts degree (*id.*); although she alleged that she had been clean and sober for many years, she admitted using marijuana a month prior to hearing (*id.*). Because the ALJ did not believe plaintiff, she also discounted opinions provided by medical and other witnesses that were based on plaintiff's "subjective complaints and limitations" (*id.*).

Nevertheless, in order to find that plaintiff suffered from no severe impairments, the ALJ must find that the impairments, or any combination of them, had "no more than a minimal effect on an individual's ability to work." *Smolen v. Chater,* 80 F.3d 1273 (9th Cir. 1996). The "step-two determination of whether a disability is severe is merely a

threshold determination of whether the claimant is able to perform [her] past work."
*Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007). Therefore, a finding that the disability of a claimant "is severe at step-two only raises a prima facie case of a disability." *Id.* (*citing Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999)).

An impairment is "not severe" if it does not "significantly limit" the ability to conduct basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs," including, for example, "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" *Smolen, supra*, 80 F.3d at 1290 (*quoting Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (*adopting* Social Security Ruling "SSR" 85-28)). The step-two analysis is "a *de minimis* screening device to dispose of groundless claims." *Smolen, supra,* 80 F.3d at 1290 (*citing Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987)).

According to Social Security Ruling 96-3b, "[a] determination that an individual's impairment(s) is not severe requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any impairment-related symptoms), and an informed judgment about the limitations and restrictions the

impairments(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." SSR 96-3p, 1996 SSR LEXIS 10 at *4-*5 (*citing* SSR 96-7p); *see also Slayman v. Astrue*, 2009 U.S. Dist. LEXIS 125323 at *33-*34 (W.D. Wa. 2009).

Here, the ALJ's concerns about plaintiff's credibility overshadow the overwhelming documentation of physical and mental limitations observed and measured by health care professionals. The medical record is replete with references to longitudinal treatment records that document a number of subjective and objective signs and symptoms that were consistent with plaintiff's medically determinable impairments and plaintiff's resulting physical and mental limitations. (*See, e.g.,* Sea Mar records noting whole body pain (Tr. 585, 587, 644), generalized muscle weakness (Tr. 598) anxiety and depressive symptoms (Tr. 631, 632, 634, 644, 653)). The ALJ either failed to discuss these items or did not report them accurately. For instance, in regard to plaintiff's fibromyalgia, the ALJ noted that there were no tender points counted (Tr. 27). To the contrary, multiple tender points were reported at Sea Mar and recorded (Tr. 644).

Further, after finding that plaintiff had medically determinable impairments, the ALJ then questioned her own findings, stating that the medical records did not support a diagnosis of lupus, fibromyalgia, or arthritis (Tr. 27). While the ALJ acknowledges that plaintiff was treated for these impairments, she suggests that the diagnosis was ambiguous (Tr. 27). If the ALJ did not believe the diagnosis, then she had an affirmative duty to develop the record. The ALJ "has an independent 'duty to fully and fairly development the record.'" *See Tonapetyan v. Halter*, 242 F.2d 1144, 1150 (9th Cir. 2001)

(*quoting Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996).  If the medical records paints an incomplete picture, but includes some evidence of problems sufficient to pass the *de minimis* threshold of step 2, then the ALJ has an affirmative duty to supplement the medical record. *See Webb v. Barnhart*, 430 F.3d 683, 687 (9th Cir. 2005).  Since her health care providers are treating plaintiff for these conditions and the conditions are noted in the record, then the ALJ is required to develop the record if she is not satisfied as to the accuracy of these diagnoses.  Instead, here, the ALJ simply rejected them.

Also, this is legal error because an ALJ must explain why her findings are more correct than those of the doctors. *See Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

Regarding plaintiff's subjective complaints, the determination of whether or not to accept a claimant's testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, *supra*, 80 F.3d at 1281 (*citing Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986)).  First, the ALJ must determine whether or not there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen, supra*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms "based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*) (*citing Cotton, supra*, 799 F.2d at 1407).  Absent affirmative evidence that the claimant is malingering, the ALJ must provide specific "clear and convincing" reasons for rejecting the claimant's testimony.

*Smolen, supra*, 80 F.3d at 1283-84; *Reddick, supra*, 157 F.3d at 722 (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996); *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)).

Here, while noting inconsistencies in plaintiff's testimony, there is no statement either by the ALJ or by any of the treatment providers that plaintiff is malingering. Instead, the ALJ provides her own conclusion that "the evidentiary record provides another reason for claimant's alleged inactivity: other people have allowed her to avoid doing anything" (Tr. 27). While this may very well be true, this is not a clear and convincing reason for rejecting plaintiff's testimony regarding her subjective complaints of pain.

Regarding plaintiff's alleged mental impairments of bipolar disorder, post-traumatic stress disorder and depression, the ALJ's findings are also limited. Again, after finding that plaintiff had mental impairments, the ALJ questioned whether or not those impairments had been established (Tr. 28). The Social Security Regulations set forth a specific procedure for evaluating mental impairments. 20 C.F.R. § 404.1520a(a). This procedure applies "at each level in the administrative review process," including the ALJ's written decision issued after a hearing. *See id.* According to this procedure, the ALJ first must determine whether or not a medically-determinable mental impairment exists by evaluating the relevant symptoms, signs and laboratory findings. 20 C.F.R. § 404.1520a(b)(1); *see also* 20 C.F.R. §§ 404.1508, 404.1528. In a case where an ALJ found that a claimant had a mental impairment, but that it was not severe, the Ninth Circuit concluded that the ALJ committed legal error by not documenting application of

the special procedure required for evaluating mental impairments. *See Keyser v. Comm'r SSA*, 648 F.3d 721, 726 (9th Cir. 2011); *see also* 20 C.F.R. § 404.1520a.

Once it is determined that a mental impairment exists, the ALJ must rate the degree of functional limitation resulting from the impairment. 20 C.F.R. § 404.1520a(b)(2). The regulations require the ALJ to include specific findings as to the degree of limitation in activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The regulations require that the ALJ rate the degree of functional limitation in the four areas described above. *Id.* As quoted by the Ninth Circuit, the ALJ's written decision "'*must* incorporate the pertinent findings and conclusions based on the technique,' and '*must* include a specific finding as to the degree of limitation in each of the functional areas.'" *Keyser*, *supra*, 648 F.3d at 725 (*quoting* 20 C.F.R. § 404.1520a(e)(4)) (emphasis added by Ninth Circuit).

Here, instead of providing specific findings as to the degree of limitations in each of the functional areas, the ALJ simply concluded that the findings were "minimal" (Tr. 28). Although the ALJ made reference to examining psychologists Dr. Morris and Dr. Brown, the ALJ did not provide specific findings supported by substantial evidence in the record to contradict the moderate to marked limitations in several key work related activities, such as performing routine tasks, getting along with co-workers and supervisors, and tolerating the pressures of a normal work setting (Tr. 368, 461, 508). While there is a difference of medical opinion about whether these limitations are "moderate" or "marked" there is no dispute regarding whether or not plaintiff's

limitations were more than minimal or mild, therefore, these findings overcome the *de minimis* Step 2 test.

Finally, the ALJ placed great reliance on the fact that plaintiff had earned an AA degree from Grays Harbor Community College during the relevant period of disability ("Her years of attending school have shown her capacity to perform independently and to engage with other people." Tr. 26). It should be noted, however, that she completed her AA degree in June of 2008 – one month prior to her application date, and relevant period of alleged disability (Tr. 22, 25, 252). She currently is not claiming disability during the period in which she was in school. Additionally, and perhaps more importantly, the evidence indicates that it took her three and one-half years to complete a two year curriculum (Tr. 250-52). She attended classes only three hours per day, three days per week (Tr. 49). Again, although this does not prove that plaintiff was disabled, it certainly fails to provide substantial evidence that plaintiff did not suffer from "severe impairments."

Overall, the ALJ's conclusion that the plaintiff did not suffer from severe impairments is not supported by substantial evidence in the record. Therefore, this matter should be reversed for further findings.

It should be noted that the ALJ did not find that plaintiff's obesity was a medically determinable impairment. On remand, the ALJ should reconsider this issue, as well. As plaintiff weighed between 230 and 252 pounds and was 5'4" tall (*see* Tr. 28), indicating a Body Mass Index of 39.5 to 43.3, this indicates that she was obese. *See e.g.,* http://www.nhlbi.nih.gov/guidelines/obesity/BMI/bmicalc.htm (last visited August 5,

2012). . Although the ALJ "need not discuss *all* evidence presented," in this case, the ALJ should have explained why the "significant probative evidence [of plaintiff's obesity] has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (per curiam) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981)).

In addition, according to Social Security Ruling, "SSR," 02-01p, the Administration "consider[s] obesity to be a medically determinable impairment and remind[s] adjudicators to consider its effects when evaluating disability . . . . [ALJs are] to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process." 2002 SSR LEXIS 1 at *2-*3 (2002).

**(2)  Whether or not the ALJ provided legitimate reasons for rejecting the reports of examining psychologists, Dr. Morris and Dr. Brown.**

Examining psychologists Dr. Morris and Dr. Brown were selected by DSHS to assess plaintiff's mental impairments for the purpose of awarding state disability assistance (*see* Tr. 366-73, 459-70, 505-15).  Dr. Morris conducted a mental health evaluation and concluded that plaintiff had moderate limitations in her ability to understand, remember and follow complex (more than 2 step) instructions, ability to exercise judgment and make decision, and ability to perform routine tasks.  Regarding social factors, Dr. Morris concluded that she had moderate limitations regarding her ability to relate appropriately to co-workers and supervisors, her ability to interact

appropriately in public contacts, her ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and her ability to control physical or motor movements and maintain appropriate behavior (Tr. 368; *see also* Tr. 461). Dr. Morris concluded that in addition to a number of moderate functional limitations, plaintiff also had the marked limitation in her ability to relate appropriately to co-workers and supervisors and her ability to interact appropriately in public contacts. Finally, Dr. Brown concluded in a subsequent report that plaintiff had similar, but not identical, moderate and marked functional limitations (Tr. 508). These were based on mental status evaluations and written tests. The ALJ discounted these opinions and concluded that these opinions were based on claimant's self report (Tr. 26-28).

Here, the fact that these two state psychologists conducted mental status evaluations belies the ALJ's conclusion that they relied entirely on plaintiff's self reporting. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate

the clinician's 'conversation' to a 'mental status examination.'" Trzepacz, *supra*, The Psychiatric Mental Status Examination 3. A mental health professional is trained to observe patients for signs of their mental health not rendered obvious by the patient's subjective reports, in part because the patient's self-reported history is "biased by their understanding, experiences, intellect and personality" (*id.* at 4), and, in part, because it is not uncommon for a person suffering from a mental illness to be unaware that her "condition reflects a potentially serious mental illness." *Van Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).

Additionally, the ALJ's conclusion that neither of these psychologists knew about plaintiff's successful completion of her college work appears to be inaccurate (*see* Tr. 26). The DSHS file includes information regarding plaintiff's AA degree (Tr. 223). Additionally, Dr. Morris specifically noted in his report that plaintiff had "3 yrs college GHC" (Tr. 369; *see also* Tr. 462 ("GHC")). Therefore, the ALJ's assumptions regarding the psychologists' report are not supported by the substantial evidence in the record.

This constitutes an independent basis for reversing the ALJ's decision and remanding this case for further consideration.

**(3)    Whether or not the ALJ provided legitimate reasons for rejecting the report of plaintiff's treating ARNP**

The ALJ rejected the opinions of ARNP Raykowski that plaintiff was severely limited and unable to lift at least two pounds or unable to stand and/or walk (Tr. 26). ARNP Raykowski performed range of motion testing for DSHS on two separate

occasions approximately a year apart (Tr. 413-16, 478-81). The ALJ inaccurately concluded that this opinion was based on a single "point in time" (Tr. 26). Obviously, that was not the case. When evaluating nurse practitioner opinions, while not deemed an "acceptable medical resource" the information is important and should be evaluated to determine the severity of the impairment and any functional effects. SSR 06-03P.

An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Here, because ARNP Raykowski provided her opinion regarding clear limitations that plaintiff's pain and weakness limited her to sedentary and, at times, less than sedentary level work (Tr. 413-16, 478-81), the ALJ was required to provide germane reasons for rejecting such testimony. The ALJ failed to do so here. It should be noted that ARNP Raykowski provided treatment and evaluation of plaintiff for two years (Tr. 579-85, 595-618, 621-54). The longitudinal record supporting ARNP Raykowski's opinions certainly should have been considered by the ALJ more thoroughly. The ALJ's conclusions, in this regard, are not supported by substantial evidence in the record.

**(4)    Whether or not the ALJ provided reasons germane to Lindsay Frost for rejecting her lay statement**

In light of the Court's determination regarding the ALJ's evaluation of plaintiff's credibility and the medical and psychological evidence, it is clear that the ALJ also should be reconsidering her evaluation of the lay testimony that she rejected.

An ALJ may disregard opinion evidence provided by "other sources," characterized by the Ninth Circuit as lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner, supra*, 613 F.3d at 1224 (*citing Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). This is because in determining whether or not "a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1053 (9th Cir. 2006) (*citing Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

Based on the relevant record, and due to the errors already identified, the Court concludes that the lay evidence provided by Ms. Frost should be evaluated anew following remand of this matter.

**(5)    Harmless Error**

Defendant argues that any error made by the ALJ is harmless and should not prevent her ruling from being upheld (ECF No. 20, page 2). This Court disagrees.

The Ninth Circuit has "recognized that harmless error principles apply in the Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). The

court noted multiple instances of the application of these principles. *Id.* (collecting cases). The court noted that "several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts should review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

This Court already has discussed a number of errors and ambiguities in the ALJ's written decision. It is clear that the ALJ relied on her own conclusion that plaintiff did not suffer from any severe impairments rather than relying on the conclusions of plaintiff's treating or examining doctors. Hence, this error by the ALJ is harmful and is not inconsequential to the nondisability finding. *See Molina*, *supra*, 674 F.3d at 1115 (*quoting Carmickle*, 533 F.3d at 1162).

The ALJ's failure to credit plaintiff's testimony directly impacted the ALJ's finding regarding plaintiff's functional limitations and the ultimate finding regarding nondisability, therefore, this error, too, is not harmless. *See Molina*, *supra*, 674 F.3d at

1115 (*quoting Carmickle*, 533 F.3d at 1162). Although the ALJ included some valid findings in her written decision, these do not negate the harmfulness of the errors discussed, and they do not provide substantial evidence for the ALJ's findings and ultimate decision.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 6th day of August, 2013.

J. Richard Creatura
United States Magistrate Judge